**EMPLOYERS COMMERCIAL UNION IN-SURANCE COMPANY, Appellant,**

**v.**

**Mary Ellen SCHMIDT, Appellee.**

**No. 4666.**

Court of Civil Appeals of Texas, Eastland.

March 19, 1974.

Rehearing Denied May 17, 1974.

---

awarding Mary Ellen Schmidt total and permanent disability benefits. Employers Commercial Union Insurance Company, the insurance carrier appeals.

The disabling condition of Mary Ellen Schmidt was diagnosed as a chronic myositis or trapezius syndrome. It was the opinion of her doctor that the condition probably resulted from the position in which she worked at her job. Such position was described as sitting in a rather stooped posture while manipulating small watch components with the hands and wrists while the shoulder musculature and upper arms remained in a fixed rigid position.

The record reflects that Mrs. Schmidt developed pain in her neck, shoulder, left arm and hand in May of 1971. Her condition worsened so she took a thirty day sick leave in September of 1971. During this leave, Mrs. Schmidt was hospitalized for two days while tests were administered to determine the cause of her trouble. Following the sick leave, she returned to her job where she worked until February 20, 1972, when she was again hospitalized for a period of time and has never returned to work.

The evidence established that Mrs. Schmidt's employer in addition to carrying workmen's compensation insurance provided additional coverage for its employees at the employee's election. The employer sponsored a plan that paid income replacement benefits to employees while disabled from causes not covered by workmen's compensation and offered a plan which covered medical expenses not covered by workmen's compensation. Mrs. Schmidt participated in both plans and drew benefits from both plans following her September 1971 hospitalization. Her testimony was that she understood the two plans were for non-occupational conditions. Further, Mrs. Schmidt testified she was aware of the workmen's compensation insurance coverage provided by her employer. It was stipulated that she filed her no-

Robert D. Batjer, Jr., Pope, Dickenson, Batjer, Glandon & Baker, Abilene, for appellant.

Bob R. Hanna, Schulz, Hanna & Burke, Abilene, for appellee.

RALEIGH BROWN, Justice.

This is a workmen's compensation case. Trial before a jury resulted in a judgment

tice of injury and claim for compensation with the Industrial Accident Board June 27, 1972.

Employers Commercial Union Insurance Company went to trial upon a sworn pleading that Mrs. Schmidt had failed to file her notice of injury and claim for compensation within the time allowed by law and that no good cause existed to excuse such failure. Mrs. Schmidt contended good cause existed to excuse her failure to file her claim within six months from the date of her injury because she did not believe her disabling condition to have arisen out of her employment until immediately before her claim was filed.

The jury answered only the following special issues:

"ISSUE NO. 1

Do you find from a preponderance of the evidence that Plaintiff incurred an occupational disease?

'Occupational disease' means any disease arising out of and in the course of employment which causes damage or harm to the physical structure of the body and such other diseases or injuries as naturally result therefrom. An 'occupational disease' shall also include damage or harm to the physical structure of the body occurring as the result of repetitious physical traumatic activities extending over a period of time and arising in the course of employment.

Answer 'We do' or 'We do not.'

ANSWER: 'We do'

If you have answered Issue No. 1 'We do' then answer Issue No. 2, otherwise do not answer Issue No. 2.

ISSUE NO. 2

Do you find from a preponderance of the evidence that Plaintiff incurred such occupational disease in the course of employment with U. S. Time Corporation?

Answer 'We do' or 'We do not.'

ANSWER: 'We do'

If you have answered Issue No. 2 'We do' then answer Issue No. 3, otherwise do not answer Issue No. 3.

ISSUE NO. 3

Do you find from a preponderance of the evidence that such occupational disease was a producing cause of any total incapacity?

Answer 'We do' or 'We do not.'

ANSWER: 'We do'

If you have answered Issue No. 3 'We do' then answer Issue No. 4, otherwise do not answer Issue No. 4.

ISSUE NO. 4

Find from a preponderance of the evidence the beginning date of such total incapacity.

Answer by giving the Month, Day and Year.

ANSWER: February 20, 1972

If you have answered Issue No. 3 'We do' then answer Issue No. 5, otherwise do not answer Issue No. 5.

ISSUE NO. 5

Do you find from a preponderance of the evidence that such total incapacity is permanent or was, or will be temporary?

Answer 'Permanent' or 'Temporary.'

ANSWER: Permanent

If you have answered Issue No. 5 'Temporary' then answer Issue No. 6, otherwise do not answer Issue No. 6.

ISSUE NO. 7

Do you find from a preponderance of the evidence that such occupational disease was or will be a producing cause of any partial incapacity?

Answer 'We do' or 'We do not.'

ANSWER: 'We do'

If you have answered Issue No. 7 'We do' then answer Issue No. 8, otherwise do not answer Issue No. 8.

·  ·  ·  ·  ·  ·

ISSUE NO. 12

Do you find from a preponderance of the evidence that within six months from the date of the cumulative injury (or disease), plaintiff had a reasonable doubt as to whether her condition arose out of the course of her employment with U. S. Time Corporation?

Answer 'We do' or 'We do not.'

ANSWER: 'We do not'

If you have answered Issue No. 12 'We do' then answer Issue No. 13, otherwise do not answer Issue No. 13."

The workmen's compensation carrier now contends the trial court erred in awarding total and permanent disability benefits to Mary Ellen Schmidt for the reason that as a matter of law the date of Mrs. Schmidt's "cumulative injury" was more than six months prior to the filing of her notice of injury and claim for compensation with the Industrial Accident Board.

Employers Commercial Union Insurance Company argues that Mrs. Schmidt's cumulative injury was on or about September 7, 1971; therefore, the filing of her claim with the Industrial Accident Board on June 27, 1972, was not within the six months provided by statute. The jury having resolved the "good cause" issue against her appellant says she must now be denied any recovery as a matter of law.

The issue before this court is whether the evidence conclusively establishes that Mrs. Schmidt's condition arose "out of and in the course of her employment" and whether or not her work caused "disability" more than six months prior to June 27, 1972.

Article 8306, Section 20, Vernon's Ann. Civ.Stat., reads in part:

"Whenever the term 'Occupational Disease' is used in the Workmen's Compensation Laws of this State, such term shall be construed to mean any disease arising out of and in the course of employment which causes damage or harm to the physical structure of the body and such other diseases or infections as naturally result therefrom. An 'Occupational Disease' shall also include damage or harm to the physical structure of the body occurring as the result of repetitious physical traumatic activities extending over a period of time and arising in the course of employment; *provided, that the date of the cumulative injury shall be the date disability was caused thereby."* (emphasis added)

The testimony directed to the issue of Mrs. Schmidt's condition, its disabling effects, and the inception date of such disability was presented by six witnesses. Mrs. Schmidt's testimony is inconclusive. Basically, she testified that she was concerned about her condition; she felt she was to an extent disabled through October, November and December of 1971 and January of 1972, even though she worked; she had continued to work, meeting her quota until February 1972, when she first became aware of the cause of her physical problem.

Mrs. Leggett, a fellow employee, testified only that Mrs. Schmidt complained of pain in her upper body and hurting in her shoulder and arms in 1971.

Two supervisory employees, W. A. McDonald and David Hallford, testified for the carrier. Their testimony principally described the working conditions of Mrs. Schmidt and similar employees; the type of equipment with which they worked; the sitting position required to do the job and the efforts of the company to accommodate its employees. Mr. Hallford further testified Mrs. Schmidt did meet her quota.

Dr. Davenport, a neurologist to whom Mrs. Schmidt was referred, testified he first saw her in February of 1972; that he

obtained a history of Mrs. Schmidt from the discharge summary of the hospital, admission date being February 20, 1972. In his opinion, Dr. Davenport agreed with the aforementioned discharge summary which stated Mrs. Schmidt had "muscle spasm, trapezius, paracervical musculature probably related to this lady's type of work although, of course, this cannot be definitely proven." He further testified she was incapacitated.

The fairest reading of the testimony of Dr. Casey, Mrs. Schmidt's treating doctor, was that in his opinion Mrs. Schmidt's condition at the time of trial was basically the same as it originally had been since September 1971; that it was in his opinion, disabling then and now and was caused by her work.

■ The general rule is that a jury is not bound by opinion testimony and such testimony does not establish material facts as a matter of law. Hood v. Texas Indemnity Ins., Co., 146 Tex. 522, 209 S.W. 2d 345 (1948); Webb v. Liberty Mutual Insurance Company, 501 S.W.2d 350 (Tex.Civ.App. Eastland 1973, writ ref. n. r. e.).

The only finding made by the jury as to the date of "disability" was their finding that total incapacity commenced on February 20, 1972. The jury failed to find the beginning date of any partial incapacity.

■ We cannot hold that the evidence establishes as a matter of law that Mrs. Schmidt suffered "disability" more than six months prior to June 27, 1972, as a result of her employment.

Employers Commercial Union Insurance Company also urges that Mrs. Schmidt judicially admitted that the date of her cumulative injury was on or about September 7, 1971, thus barring her claim because she failed to file it within the time required by law.

This argument is advanced because Mrs. Schmidt proceeded to trial on a pleading that alleged the date of her injury to be September 7, 1971. During the second day of trial, the court granted the following trial amendment on behalf of Mrs. Schmidt:

"NOW COMES plaintiff and moves the Court for permission to amend her petition on trial herein and insert the word 'cumulative' prior to the date of injury alleged in her petition on file herein, and further to allege in the alternative that the cumulative date of injury was February 20, 1972."

■ The workmen's compensation carrier contends that a stipulation entered into by Mrs. Schmidt prohibited her from amending the first alleged date of injury, and she thus judicially admitted the cumulative date of her injury to be September 7, 1971. We disagree.

The stipulation stated:

"Plaintiff and Defendant further stipulate and agree in open court that the effect of Plaintiff's Trial Amendment filed on June 12, 1972, is to insert the word 'cumulative' between the words 'sustained' and 'accidental injuries' on the next to the last line of Plaintiff's Original Petition, Page 1, and shall have no other effect."

The record before this court indicates that the restrictive language of the stipulation, was meant to refer only to the insertion of the word "cumulative" and not to the amended date of injury.

The only point of error is overruled. The judgment is affirmed.